# EXHIBIT A

BERNARD M. REILLY LLC - ID#283531972
90 MAPLE AVENUE
RED BANK, NEW JERSEY 07701
(732) 530-7777
Attorney for Plaintiff



| | |
|---|---|
| **JASON A. BURKE,** | : SUPERIOR COURT OF NEW JERSEY |
| | : LAW DIVISION |
| Plaintiff, | : MONMOUTH COUNTY |
| | : |
| vs. | : Docket No. MON-L- 661·17 |
| | : |
| **BOROUGH OF RED BANK; STANLEY J.** | : Civil Action |
| **SICKELS, officially and** | : |
| **individually; COMMUNICATION** | : COMPLAINT AND JURY DEMAND |
| **WORKERS OF AMERICA (CWA) LOCAL** | : |
| **1075, AFL-CIO; KEVIN TAURO;** | : |
| **JOHN DOE (1 THROUGH 7); AND ABC** | |
| **CORPORATION (1 THROUGH** | |
| **3),** | |

Defendants.

     **Plaintiff, JASON A. BURKE,** residing at 5 Princeton Court, Neptune, New Jersey, by way of Complaint against the Borough of Red Bank; Stanley J. Sickels; Communications Workers of America (CWA) Local 1075, AFL-CIO, Kevin Tauro, John Does (1 through 7), and ABC Corporation (1 through 3), as Defendants, says:

### FIRST COUNT

    1.  The defendant Borough of Red Bank (hereinafter "Borough") is a municipal corporation and entity which operates and is responsible for the municipal government and functions of the Borough of Red Bank.

    2.  The Borough's authorized operational structure includes various departments, inclusive but not limited to the Police Department and the Public Works Department. The Borough hires and engages various employees in those Departments to perform the work and duties necessary and appropriate to operate the Borough and its municipal functions.

1

3.    The defendant Stanley J. Sickels at all relevant times was and is the Borough Administrator of the defendant Borough of Red Bank, appointed and operating under the authority of N.J.S.A. 40A:9-136 and the Ordinances of the Borough.  As the Borough Administrator, the defendant Sickels is the Chief Executive Officer of the Borough and has been delegated and charged by the Borough with the authority to make operational decisions, including personnel actions.  The defendant Sickels is being sued in both his official capacity as Borough Administrator and individually for his actions and conduct.

4.    The defendant Communications Workers of America (CWA) Local 1075, AFL-CIO (hereinafter CWA Local 1075) is the Collecting Bargaining Union and Representative charged with representing and being responsible to represent all full time Blue Collar employees of the defendant Borough in the Public Works, Parks, Sanitation, and Maintenance and Custodial sections or departments, as well as certain office and clerical personnel.  As the sole and exclusive collective bargaining representative, CWA Local 1075 has the right and does assess and collect from covered employees within the designated bargaining unit certain dues and payments for their Union representation and is charged and responsible to represent said employees fairly and in accord with relevant law.

5.    The defendant Kevin Tauro (hereinafter Tauro) is the president and business agent for the Communication Workers of America (CWA) Local 1075, AFL-CIO, and is the chief executive officer of defendant CWA Local 1075. As chief executive official, the defendant is charged with and responsible for all operational decisions on behalf of defendant CWA Local 1075 including determinations as to pursuit of grievances and arbitrations on behalf of said CWA Local 1075.  The defendant Tauro is being sued both in his official capacity as the CWA Local 1075 and individually for his actions and conduct.

6.    The defendants John Doe (1 through 7) are persons, present identities being unknown, who were officials and/or employees of the defendant Borough of Red Bank and/or defendant Communications Workers of America (CWA) and who were involved, participated in, and/or approved the improper discrimination and actions against plaintiff and/or allowing same to occur.

2

7.   The defendants ABC Corporation are entities, present identities being unknown, which were involved, participated in, or responsible for the conduct of said CWA Local 1075 and/or defendant Tauro and the improper discrimination and actions against plaintiff and/or allowing same to occur.

8.   The plaintiff Burke was born on January 11, 1980 and was raised in Neptune and Asbury Park, New Jersey.  During his early education in the Neptune and Asbury Park School systems, the plaintiff was assessed and diagnosed as having Learning Disabilities.  As a consequence, plaintiff Burke was deemed and determined by the School authorities as having substantial Learning Disabilities and requiring Special Education assistance and classes.

9.   As a consequence of being classified as learning disabled, plaintiff was assigned and placed by school authorities in a private school exclusively for children with learning disabilities, known as The Harbor School.  The plaintiff was placed in and attended The Harbor School for several years, through his graduation from Grade 12 from the Harbor School in 1998.

10.   Because of his learning disability as described in the classification above, plaintiff had and has significant difficulties in reading comprehension, comprehending written instruction, and doing basic math.  His learning disability includes and involves, among other problems, his reversing numbers and letters in reading documents, this being partially the cause of his difficulty in reading comprehension and basic math.  Plaintiff also has delayed auditory processing, which basically results in the need for instructions to be repeated to him multiple times.  At times he has difficulty in concentrating for extended periods of time, due to attention deficit disorder. An individual, such as plaintiff, afflicted with such learning disabilities does not get "cured" of those learning disabilities, as one gets cured of a cold.  A person with such a learning disability learns through instruction to function and work the best way possible within the scope of their disability.

11.   In the year 2001, the plaintiff Burke applied for employment with the defendant Borough as a Public Works Laborer.

3

12.   On or about May 24, 2001, the plaintiff Burke was hired as a full time employee with the Red Bank Borough Public Works department, with the Job Classification and title of "Laborer".

13.   After being hired and employed, the plaintiff Burke performed his duties as "Laborer" properly and satisfactorily through the Contractual Probationary Period.  Consequently, as per the terms of the Borough Collective Bargaining Agreement and rules governing said employment, plaintiff Burke became a full time permanent employee of the Borough Public Works Department in 2001 and became a member of the Collective Bargaining Unit, represented by CWA Local 1075 (then known as Local 1034).

14.   As noted, the plaintiff Burke was hired in 2001 in the Public Works Department in the job title and classification as a "Laborer".  At all times thereafter until his termination of employment in 2015, plaintiff remained in that classification and pay grade, advancing over time in seniority and the Step pay scale for that position.  At all times, from his hiring by the Borough in 2001 through 2014, there was no requirement that employees that were laborers have a Commercial Driver's License (CDL).

15.   The terms and conditions of employment of non-managerial employees in the Public Works Department are set forth in the Collective Bargaining Agreement between the Borough and CWA Local 1075, the Borough Personnel Manual, and the applicable Job Descriptions promulgated by the Borough of Red Bank.

16.   Throughout the entire period of plaintiff's employment with the defendant Borough, his duties and responsibilities as "Laborer" consisted almost entirely of working on the rear of a Sanitation (garbage) truck, loading household refuse into said sanitation vehicles, or working as a janitor in Borough Hall or other Borough buildings or facilities.  None of those duties required or involved the operation of Borough heavy equipment or heavy trucks, for which a Commercial Driver's License ("CDL") was required.  In fact, at the time plaintiff was first hired as a Laborer and for his first few years of employment, he did not possess a regular Driver's License.

4

17.   In fact and practice in the Public Works Department, the operation or driving of heavy equipment or heavy trucks for which a CDL was required was performed by Public Works employees having the higher classification and title of "Driver/Operator/Skilled Worker" under the Collective Bargaining Agreement, and receiving a higher pay grade.  The plaintiff as a Laborer was not requested or expected to operate such heavy equipment or trucks by his Public Works supervisors, and he and other "Laborers" in that job classification did not operate or drive such equipment.

18.   In January 2014, the defendant Sickels unilaterally made a determination that all Public Works employees must obtain and possess a Commercial Driver's License (CDL) by January 1, 2015 or their employment would be terminated.  A Memo to that effect was allegedly issued to Public Works Department employees and/or posted in the Red Bank Public Works Department in late January 2014.

19.   This Memo and Directive was issued by the defendants Borough/Sickels without any inquiry or investigation into the physical or mental capabilities or abilities of the employees subject to this new requirement to qualify for and obtain this CDL, and whether those employees were physically or mentally handicapped and/or capable of attaining a CDL.

20.   In fact, the obtaining of a Commercial Driver's License (CDL) from the State Motor Vehicle Commission (MVC) requires extensive study and training.  The requirements that must be passed to obtain a CDL include written examinations as to traffic laws and heavy vehicle operational systems, oral testing by MVC inspectors on heavy vehicle equipment, parts, and operational characteristics, and a driving test by MVC inspectors on such vehicles.

21.   In fact, many existing Public Works career employees --- being older and now having physical and/or intellectual limitations on their ability to study the materials and/or operate such heavy equipment --- would not be expected to be able to meet those requirements and obtain a CDL.

22.   Further, upon information and belief, this job requirement was put in place by this Memo and Directive without being negotiated with the CWA Local 1075, the requirement was never made part of the Job Description and the requirement never

5

included in the Personnel Manual for Public Works employees, and never negotiated and/or placed in the Collective Bargaining Agreement between the Borough and CWA Local 1075 as a term and condition of employment as was legally required.

23.  Upon information and belief, other municipalities in the Monmouth County area and/or in the State of New Jersey that have implemented a requirement for Public Works employees to have and possess a Commercial Driver's License (CDL) have implemented that as a requirement for new Public Works hires only, recognizing that existing employees may have physical and/or learning impairments or disabilities that render it difficult or impossible for such employees to secure a CDL and that it would be illegal and/or unfair to terminate such career employees for being unable or failing to obtain this newly imposed and non-essential job requirement after years of loyal service.

24.  After unilaterally promulgating this Directive, the defendants Borough and defendant Sickels offered minimal and/or inadequate assistance and/or instruction to existing Public Works employees as to the meeting the requirements and passing the required tests so as to obtain this purported CDL requirement.

25.  During the period after the Directive was promulgated, the plaintiff Burke had a number of communications with his immediate manager and supervisor --- the Director of the Department of Public Works --- and/or his Union Shop Steward and communicated to said Manager/Supervisor and the Union Shop Steward that plaintiff would have difficulty or be unable to obtain a CDL due to his learning disabilities and requesting a reasonable accommodation and/or deferral of this requirement.

26.  Pursuant to various rules and procedures in the Public Works Department, the plaintiff Burke was required to communicate through the chain of command to his Manager/Supervisor, and was not authorized or permitted to communicate directly to Borough Administrator Sickels or the Borough Governing Body.

27.  Further, pursuant to various rules and instructions from the Union CWA Local 1075, the plaintiff Burke was regularly directed and instructed to make all communications to his Union Shop Steward, and he was not authorized or permitted to

6

communicate directly to the Local 1075 president/business agent
or any other union official.

28.  Due to his learning disabilities and limitations,
plaintiff Burke was not able to properly comprehend the study
material and did not obtain a CDL by the end of 2014.

29.  Without responding to plaintiff's notifications of his
disabilities and need for accommodation, the defendant Borough
through a notification and determination by defendant Sickels
thereupon unilaterally terminated plaintiff's 15 year employment
with the Borough Public Works Department effective February 27,
2015.  Said termination was implemented summarily without any
grievance and/or due process hearing.

30.  On or shortly after February 27, 2015, pursuant to the
terms of the Collective Bargaining Agreement as between the
Borough and CWA Local 1075, the plaintiff Burke filed a
Grievance with the defendant Borough and defendant CWA Local
1075 seeking to have a Grievance hearing and adjudication of
this termination of employment, by binding arbitration if needed
and appropriate.

31.  The plaintiff at this time made efforts by OPRA
Request to obtain an executed copy of the Collective Bargaining
Agreement between the defendant Borough and CWA Local 1075.

32.  However, in response to the OPRA Requests to the
Borough and requests to CWA Local 1075, plaintiff was never
provided a copy of a current executed Collective Bargaining
Agreement between the Borough and CWA Local 1075 because such
document apparently did not exist.  Instead, plaintiff was
provided a copy of the expired Collective Bargaining Agreement
between the Borough and Union for the period of 2005 through
2008, together with an assortment of additional "Memorandum of
Agreement" and Sidebar Agreements" addressing and/or referring
to changes and/or revisions to the 2005-2008 Collective
Bargaining Agreement that had apparently been agreed in
subsequent periodic negotiations between the Borough and CWA
Local 1075.  The net effect was that there was no readily
understandable current Collective Bargaining Agreement made
available to plaintiff or even in existence.

7.

33.   Pursuant to the Collective Bargaining Agreement and/or documents as made available to plaintiff, he had a right to file a Grievance to the Borough and CWA Local 1075 seeking to challenge and contest the unilateral termination of his 15 year employment with the Borough.  Pursuant to the available Collective Bargaining Agreement documents, plaintiff Burke filed a timely Grievance with the defendant Borough and defendant CWA Local 1075.

34.   Since the termination decision was by Borough Administrator Sickels, the Grievance requested and proceeded to a Step Three appeal to Borough Administrator Sickels.  Pursuant to that Step Three of the Grievance Procedure, the Borough Administrator is charged with conducting an informal hearing within five (5) days of receipt of the Grievance and required to respond in writing with a determination on the Grievance within 10 days of the conduct/close of this hearing.

35.   However, although the plaintiff had filed his Grievance immediately contesting his unilateral termination on February 27, 2017, the defendant Borough and defendant Borough Administrator failed to scheduled and conduct the Grievance hearing in a timely manner.

36.   In the meantime, the plaintiff Burke --- having been unilaterally terminated from employment as of February 27, 2015 by the Borough Administrator and being without any income or employment --- promptly filed a claim for unemployment insurance benefits/payments with the State of New Jersey, Department of Labor, Unemployment and Disability Insurance Services.

37.   However, the defendant Sickels on behalf of defendant Borough falsely and unjustifiably reported to the State Department of Labor that plaintiff had voluntarily left his employment.  Consequently, based on this Borough response, the plaintiff was denied payment of unemployment benefits by the State.

38.   As a consequence of this false report by defendant Sickels and the Borough, the plaintiff was left without any income and had no resources to support himself and his family during the delay of his Grievance hearing.

8

39.   After several weeks without income, plaintiff was notified to come to Borough Hall on April 15, 2015 for what he believed was to be his Step 3 Grievance hearing on the challenge to his unilateral termination of his public employment without any hearing.  Plaintiff was notified and advised by the defendant CWA Local 1075 and defendants Borough/Sickels that he would be represented by said CWA Local 1075 and could not have an attorney of his choosing present or attending the proceeding.

40.   Upon appearing at the meeting at Red Bank Borough Hall on April 15, 2015, without any prior notice or warning the plaintiff was presented several documents, being a purported "Settlement Agreement", "General Release and Waiver", and "Acknowledgment".

41.   Plaintiff was not given or presented with the opportunity or ability to review the proposed documents, or even to fully read and understand the documents, given his learning disabilities.  Plaintiff was informed by both the Borough representatives and the CWA Local 1075 representatives present that, if he did not immediately sign the documents, his termination of employment would be upheld and he would have no ability or right to challenge that termination.

42.   The "Settlement Agreement" and other documents presented to plaintiff essentially stated that plaintiff Burke was voluntarily resigning his 15 year position and employment with the Borough effective February 27, 2015 and was releasing any and all claims and grievances against the Borough.  The documents further provide that Plaintiff Burke would thereafter be eligible to be rehired by the Borough as Laborer I, on probationary status, and would forfeit all seniority and advanced pay rate and benefits based on his seniority.  By the further terms of said documents, plaintiff Burke would be required to obtain a permanent CDL License within the 90 day probationary period after being rehired, and if he failed to obtain said CDL within this period would be immediately terminated from employment with no right to challenge or grieve said termination.

43.   The defendant CWA Local 1075 and defendant Tauro --- despite their obligation to represent plaintiff fairly and to properly contest his termination and investigate his background and capabilities, and despite having known or should have known and/or investigate as to plaintiff's learning disabilities or

9

medications that would prevent and preclude him from obtaining a CDL --- nevertheless told and assured plaintiff that he was getting his job back and that this was the only thing that could be done. The defendants CWA Local 1075 and Tauro further advised plaintiff that, if he did not sign off on the documents immediately, CWA Local 1075 would not proceed further with his Grievance and he would have no further recourse and his termination would be final.

44.   Being under extreme duress because of being unjustifiably denied unemployment compensation by the Borough's false and punitive protest, and being further precluded and denied any ability to have present and contact any attorney, plaintiff was improperly pressured and coerced to execute said documents immediately upon threat that he would have no further recourse or avenue of grievance or appeal.

45.   Further, although the documents include and contain statements in the Acknowledgment to the effect that plaintiff had been accorded the opportunity to take 21 days to consider the Release, and further that he had the opportunity to review the documents with legal counsel of his own choosing, he was in fact precluded and denied said rights and opportunity and required and directed to sign said documents immediately or be foreclosed from further grievance processing or appeal of his termination.

46.   As a consequence of his learning disabilities combined with this improper pressure and duress and false assurances, plaintiff executed the documents placed in front of him by the Red Bank defendants/representatives and CWA Local 1075 defendants/representatives.

47.   Thereafter, in follow up to said invalid and coerced "Settlement Agreement" the plaintiff was re-hired and put back to work in the Borough Public Works Department in the same position as "Laborer", but at Step 1 of the Pay/Seniority Scale, on or about April 18, 2015. As a consequence of the terms of said documents, plaintiff incurred a substantial reduction of his pay/income and the loss of all seniority/pay scale benefits that he had accrued as a result of his 15 years of prior loyal employment/service with the Borough.

10

48.  Although the termination of plaintiff's employment as
of February 27, 2015 was purportedly based upon the
implementation and effectuation of an essential job requirement
by the defendant Sickels that all employees in the Borough
Public Works Department attain and possess a CDL, upon
information and belief certain other Public Works Department
employees who were personal friends with defendant Sickels did
not obtain a CDL and were not disciplined and/or terminated from
employment and remain employees to the present.

49.  Further, the possession of a CDL and the capability to
legally operate heavy equipment and/or heavy trucks was not, and
had never been, an essential function or requirement for all
employees in the Public Works Department.  As noted, the
plaintiff and other "Laborers" in the Department did not operate
such vehicles.  The plaintiff had been working for the previous
several years as a janitor performing cleaning and maintenance
in Borough Hall and other Borough buildings, which duties did
not involve the operation of equipment or vehicles requiring a
CDL.  After re-commencing employment on April 18, 2015, he
continued to work as a janitor in Borough buildings which did
not involve the operation of equipment or vehicles needing a
CDL.

50.  Thereafter, after re-commencing employment as a
Laborer in the Public Works Department, as per the purported
"Settlement Agreement" plaintiff pursued the testing and
requirements of the New Jersey Motor Vehicle Commission in an
effort to secure a CDL within the 90 days specified in the
purported "Settlement Agreement".

51.  Apparently in recognition that the plaintiff had
learning disabilities that would render the passing of such
tests and requirements difficult, the defendants Borough and
Sickels directed and assigned a senior Public Works
employee/mechanic with a CDL to periodically instruct and assist
plaintiff as to the testing and requirements.

52.  Thereafter, a test was scheduled in July 2015 with the
New Jersey Motor Vehicle Commission for the CDL, which test
required plaintiff to demonstrate the necessary ability to
operate a heavy motor vehicle for which a CDL was required to
operate, and further to demonstrate sufficient knowledge as to
the various mechanical systems on said vehicles.  The applicant

was required to appear at the Motor Vehicle Commission testing site with a heavy vehicle to operate and be tested upon.

53. The Borough supplied the heavy vehicle for the MVC test, to be utilized by plaintiff. Upon plaintiff appearing at the first MVC test, the MVC inspector refused to allow the test to go forward because the heavy vehicle supplied by the defendant Borough was in defective and unsafe condition.

54. Thereafter, the defendant Borough required plaintiff to pay the fee ($125) and schedule a second test. Upon eventually appearing at that second MVC test, the plaintiff was informed by the MVC inspector/official that the Study Materials that the defendant Borough had supplied him to prepare for the test were outdated and not adequate. Plaintiff was unable to pass the examination portion of the test.

55. Thereafter, the Borough again required plaintiff to pay the fee ($125) and schedule another CDL test, which test was conducted at the MVC testing site on March 10, 2016. Although plaintiff had diligently studied the (now correct) Study Materials and prepared for the test to the best of his ability, the plaintiff did not pass the examination portion of the test.

56. The next day, March 11, 2016, plaintiff was summarily and immediately terminated from his employment with the defendant Borough for not possessing or attaining a CDL. This immediate and summary termination was by notification from defendant Sickels, and was again imposed without any hearing or due process.

57. Thereafter, the plaintiff promptly filed a Grievance with the defendants Borough and Sickels and defendant CWA Local 1075 seeking an internal hearing and review of this termination of employment as per the Grievance provision in the Borough/CWA Local 1075 Collective Bargaining Agreement.

58. Thereafter, the defendants Borough and Sickels initially denied and refused to schedule and conduct a timely Grievance and/or due process hearing as provided in the Collective Bargaining Agreement.

12

59.   In addition, immediately after the action of the defendant Borough and defendant Sickels unilaterally terminating plaintiff's employment, the defendant Sickels on behalf of defendant Borough again falsely reported to the State Department of Labor that plaintiff had voluntarily quit his employment on March 11, 2016.

60.   Defendant Borough and defendant Sickels made this false report in a deliberate and punitive effort to deny the plaintiff any income to pay for food and shelter for he and his family.  That effort caused the plaintiff extreme duress and hardship until that improper action was eventually corrected and overruled by the State Department of Labor.

61.   In fact, the plaintiff was required to file an Appeal to the Appeal Tribunal of the State Department of Labor from the Notice of Disqualification from Unemployment Insurance payments/benefits issued by the State Department of Labor on April 13, 2016 based upon the false and punitive report that plaintiff had voluntarily quit his employment submitted defendant Sickels on behalf of defendant Borough.

62.   As a result of that Appeal, a telephone hearing was eventually held before a State Labor Department hearing officer. At that hearing, the false and unjustified position and report by defendant Sickels on behalf of defendant Borough was exposed and established as false.  Both plaintiff and defendant Sickels testified at said hearing and were each represented by an attorney; defendant Sickels being represented by an attorney provided by defendant Borough.

63.   The State Department of Labor Appeal Tribunal thereafter on June 2, 2016 issued a Decision that overturned and found invalid the false position and report of defendant Sickels/Borough that plaintiff had voluntarily left his Red Bank employment, and directed that plaintiff receive the unemployment benefits.

64.   In a further effort to punitively attack and punish plaintiff and deny him any income, the defendants Borough/Sickels authorized and initiated an Appeal to the next Labor Department administrative level, said Appeal was submitted by Letter dated June 21, 2016.  That Appeal again proffered the false position that plaintiff had voluntarily left his employment by his own voluntary choice.

13

65.   That Appeal and false and punitive position continued
to adversely and severely impact plaintiff and his family by
causing the State Labor Department to continue denying him the
unemployment insurance benefits to which he was entitled, and
leaving him without any income for an extended period.

66.   Eventually, the defendants Borough and Sickels
withdrew their invalid and false position, and the plaintiff
belatedly and after having endured substantial distress and
hardship eventually received the unemployment benefits that he
was entitled to receive.

67.   While that unemployment issue was ongoing, the
plaintiff continued to seek relief and a Grievance hearing that
he had applied for immediately after the March 11, 2016
termination through the Grievance procedure in the Collective
Bargaining Agreement between the defendant Borough and CWA Local
1075, including plaintiff submitting further documentation as to
his learning disabilities as effecting his ability to secure a
CDL.

68.   Although the plaintiff had submitted a timely and
detailed application/request for the Grievance hearing, neither
the defendants Borough/Sickels and/or the defendants CWA Local
1075/Tauro pursued or conducted the Step 3 Grievance hearing in
a timely manner.

69.   Having concerns based upon events to date as to the
intentions and good faith of the defendants CWA Local 1075 and
Tauro's representation and efforts to date, plaintiff repeatedly
requested that CWA Local 1075 and the Borough allow plaintiff to
have his own attorney present at any Grievance hearing and/or
allow plaintiff's own attorney to represent him at said
proceeding.  The defendants each refused to allow plaintiff's
own attorney to appear or even be present at any such
proceeding.

70.   Eventually and outside of and without regard to any
time periods or time requirements in the Collective Bargaining
Agreement, the defendants Borough/Sickels scheduled and
conducted an internal Step 3 Grievance hearing on June 21, 2016
on plaintiff's Grievance challenging the termination from
employment.

14

71. Prior to the hearing, the defendants CWA Lcoal 1075 and Tauro failed to properly prepare and investigate plaintiff's case.

72. At the hearing, the defendants CWA Local 1075 and Tauro failed and refused to adequately present the evidence and records as to plaintiff's learning disabilities and/or his ability to obtain a CDL, or that a CDL was non-essential to the Laborer position held by plaintiff, or that a reasonable accommodation should be made for plaintiff's disabilities.

73. By letter dated July 15, 2016, the defendant Sickels on behalf of defendant Borough issued an internal Step 3 Grievance determination that denied the Grievance and confirmed the plaintiff's termination of employment as of March 11, 2016.

74. That determination and decision was rendered by defendant Sickels on behalf of defendant Borough despite being aware of the plaintiff's learning disabilities and/or condition that rendered him unable to obtain a CDL, and without extending to plaintiff any requested reasonable accommodation for his learning disabilities and medical condition.

75. Thereafter, plaintiff timely requested the defendants CWA Local 1075 and Tauro to file for and pursue plaintiff's Grievance and termination to binding arbitration as permitted and specified to the Union CWA Local 1075 in the Collective Bargaining Agreement.

76. Thereafter, the plaintiff Burke was informed that the defendant CWA Local 1075 had filed a Request for Appointment of an Arbitrator with the Public Employment Relations Commission, as per the Collective Bargaining Agreement that provides for Binding Arbitration of plaintiff's Grievance and termination, but that defendant CWA Local 1075 and defendant Tauro were reserving decision on whether to actually proceed with the Arbitration.

77. Thereafter, there were a number of communications between CWA Local 1075 and the plaintiff and plaintiff's attorney with regard to the pursuit of the Arbitration and the need for defendants CWA Local 1075/Tauro to pursue same diligently and to pursue relief for plaintiff on the basis of his learning disabilities and conditions rendering it unlikely he could obtain a CDL.

78. During this period, plaintiff continued on his own to pursue obtaining a CDL from the State Motor Vehicle Commission, including contacting and pursuing assistance in obtaining a CDL from a Commercial Driver's Training facility.

79. As a result of that involvement and contact with a private Commercial Driver's Training facility as to the requirements of obtaining a CDL, plaintiff was required to provide a detailing of his disabilities and the prescription medications that he was required to take for those disabilities and medical conditions.

80. Upon that review, plaintiff in about September 2016 was advised that his disabilities and the related prescription medication that he was required to take for those disabilities/medical conditions disqualifies him from obtaining a CDL from the State MVC, unless and until he could obtain a medical clearance letter and/or a waiver from the State MVC.

81. Plaintiff and his attorney further communicated that information and the related documentation to the defendants CWA Local 1075 and defendant Tauro. In addition, there were meetings and communications between plaintiff only and defendant CWA Local 1075, defendant Tauro, and the Union attorney.

82. In those various meetings and communications, the plaintiff communicated to defendants CWA Local 1075 and Tauro that said defendants had failed to properly represent him in a number of actions including but not limited to:

(a) Allowing the defendant Borough/Sickels to unilaterally implement and enforce a CDL requirement upon existing employees.

(b) Failing to properly understand and investigate the requirements for a CDL before allowing the defendants Borough/Sickels to unilaterally implement and enforce a CDL requirement upon existing employees, and failing to properly investigate the ability of existing employees to pass the requirements for a CDL.

16

(c) Failing to properly act and respond to the information and requests plaintiff had made to his Shop Steward, as per the Union's requirements, as to his learning disabilities creating an inability to obtain a CDL and his need for a reasonable accommodation.

(d) Allowing plaintiff to be unilaterally terminated from employment on February 27, 2015 without any hearing or due process.

(e) Failing to pursue a timely hearing on the Grievance filed by plaintiff after his February 27, 2015 termination as required by the Collective Bargaining Agreement.

(f) Failing to properly represent plaintiff by in essence forcing him under extreme duress to execute the April 15, 2015 Settlement documents without properly and in good faith pursuing plaintiff's rights to a reasonable accommodation for learning disabilities and/or medical conditions, without investigation as to the requirements for a CDL and plaintiff's inability to satisfy said requirements, and without permitting plaintiff the time and opportunity to review said documents and obtain independent legal assistance.

(g) Allowing plaintiff to be again be terminated from employment on March 11, 2016 without any hearing or due process.

(h) Again failing to pursue a timely hearing on the Grievance filed by plaintiff after his March 11, 2016 termination.

(i) Continuing to fail to properly investigate and represent him with regard to his learning disabilities, medical conditions, and his need for reasonable accommodation.

(j) Failing to diligently pursue a Binding Arbitration of his termination from employment.

17

83.   In the period of these various communications, plaintiff was informed periodically that the defendant CWA Local 1075 and defendant Tauro were still considering whether to proceed with his Grievance to Binding Arbitration, although an Arbitrator had been designated through the Public Employment Relations Commission as per the Collective Bargaining Agreement process.

84.   In addition, in the period of these various communications, the defendant CWA Local 1075 and defendant Tauro made various requests for further documents or information, which plaintiff supplied to the extent possible.

85.   In early December 2016, plaintiff was informed by defendants CWA Local 1075 and Tauro that the Binding Arbitration hearing was scheduled on or about January 25, 2017.

86.   Thereafter, on approximately January 20, 2017, plaintiff was informed by defendant CWA Local 1075 that the Binding Arbitration date of January 25, 2017 had been postponed until a date in late February 2017.

87.   On or about January 23, 2017, plaintiff was informed that the defendant CWA Local 1075 and defendant Tauro had determined not to pursue plaintiff's Grievance/termination to Binding Arbitration or to represent him in that Arbitration. The notification further advised that the defendants CWA Local 1075 and Tauro would only authorize the plaintiff to proceed to the Binding Arbitration on his own, with his own representation, upon the condition and requirement that plaintiff (1) execute a full Release in the form presented by defendants CWA Local 1075/Tauro releasing said defendants from all claims against said defendants arising out of plaintiff's terminations of employment and the defendants alleged failure to fairly represent plaintiff, and (2) requiring plaintiff to pay and be responsible for all costs and expenses incurred or to be incurred for legal representation of his Grievance/termination and for all costs and expenses for the Arbitrator and Arbitration itself.  The communication further gave plaintiff a very limited time to respond, and further notified plaintiff that if the defendants CWA Local 1075/Tauro's position was not accepted within that short period and the Release and documents executed, the Arbitration would be cancelled by said defendants.

88. Plaintiff thereafter responded to the effect that he would obtain his own legal representation without cost to the Union for the Grievance/Arbitration hearing, but he would not execute the demanded full Release of said defendants. Plaintiff further responded that because he had been without work and/or on a reduced income for an extended period he had absolutely no funds to pay the anticipated substantial costs of the Arbitrator and hearing and could not pay the Arbitrator fees/costs.

89. The defendants CWA Local 1075/Tauro thereupon in early February 2017 notified plaintiff that plaintiff's response/position was not accepted, and thereafter cancelled and withdrew the Arbitration.

90. As a consequence of that action, as of early February 2017 the plaintiff was left with no further contractual or administrative avenue of redress or remedy for the improper actions against him and/or his improper termination of employment.

91. Plaintiff has been and continues to be severely and substantially damaged and impacted by reason of the unjust and improper terminations of his employment and the improper actions of the defendants, jointly and severally. Plaintiff incurred a unjust and legally invalid loss of employment, a reduced level of pay and benefits for the period from February 27, 2015 through March 11, 2016, a further loss of employment continuing to the present, severe emotional and mental distress as a consequence of these unjust actions and his inability to support himself and his family, and physical illness and injury arising from his mental and emotional distress and he and his family's inability to obtain required medications due to the loss of his employee health benefits.

92. To the extent appropriate and/or necessary, plaintiff has served upon the defendants Borough and Sickels a Notice of Tort Claim dated June 3, 2016, providing adequate notification to meet any notice requirements of the N.J.S.A. 59:1-1 et seq.

93. The actions and conduct of defendants Borough and defendant Sickels and John Does (1 through 7) in unilaterally terminating plaintiff's permanent employment or allowing said termination with the defendant Borough on February 27, 2015 was in violation of the New Jersey Law Against Discrimination

19

N.J.S.A. 10:5-1 et seq. for a number of reasons, including but not limited as follows:

    (a)    The said defendants failed to investigate the requirements for obtaining a CDL and whether the plaintiff (and other current Public Works employees) was physically and/or intellectually equipped to meet those requirements.

    (b)    That the requirement for a CDL had never been an essential function for the position of Laborer.

    (c)    That the said defendants failed to respond or act upon plaintiff's notifications to his Manager/Supervisor as per the required chain of command/communication of his learning disabilities and his need for a reasonable accommodation prior to unilaterally acting to terminate plaintiff's employment on February 27, 2015.

    (d)    That the said defendants exercised extreme bad faith by denying plaintiff unemployment benefits, a timely Grievance hearing, and any independent assistance so that, as a learning disabled individual, plaintiff was placed in a position of extreme duress such that he did not voluntarily resign his employment or execute the "Settlement Agreement" or Release placed before him by said defendants on April 15, 2015 and required to execute immediately.

    (e)    Requiring plaintiff to resign his position, and forfeit his accrued seniority in pay scale and benefits and legal rights in order to obtain supposed further time to attempt to obtain a CDL, when the said defendants knew or should have known that plaintiff due to his learning disabilities and/or medication would not be able to obtain a CDL.

    (f)    Arbitrarily imposing this requirement and termination upon plaintiff, a learning disabled individual, when other Public Works/Laborer employees who did not obtain a CDL were not terminated or impacted.

    (g)    Terminating and discharging plaintiff in retaliation for asserting his rights to a reasonable accommodation for his disability/handicap.

20

94. Further, the imposition of this arbitrary and non-essential requirement upon currently employed Laborers in the Public Works Department caused and resulted in the termination or cessation of employment of three such current employees, inclusive of plaintiff, all three being minority black employees unable to comply. The impositions of this new, non-essential requirement upon current employees, such as to cause three such long term employees performing satisfactorily to be terminated and/or resign, constitutes an unlawful employment practice as per N.J.S.A. 10:5-12.

**WHEREFORE,** the Plaintiff demands Judgment against the Defendants Borough, Defendant Sickels, and John Does (1 through 7) jointly and severally), for the following relief:

1. For an Order declaring plaintiff's termination of employment on February 27, 2015 was in violation of the New Jersey Law Against Discrimination and restoring plaintiff to his former employment and classification as Laborer with back pay and full restoration of benefits and seniority.

2. Declaring the purported Settlement Agreement and other documents to be obtained under duress and invalid.

3. For compensatory damages for past and future income losses, mental, physical and emotional damages, loss of pension rights.

4. For punitive damages.

5. For attorney fees and costs incurred.

6. Such other relief as the Court deems appropriate.

### SECOND COUNT

1. Plaintiff repeats all the allegations of the First Count as if set forth.

21

2.   The defendant Borough, defendant Sickels, and John Does (1 through 7) failed and/or refused to comply with plaintiff's constitutional rights and terms and requirements of the Collective Bargaining Agreement and related laws with regard to the providing plaintiff a due process hearing prior to his unilateral termination and loss of his property rights in his public employment in violation of his Federal and State Constitutional rights.

**WHEREFORE**, the Plaintiff demands Judgment against the Defendants Borough, Defendant Sickels, and John Does (1 through 7) for the following relief:

1.   For an Order declaring plaintiff's termination of employment on February 27, 2015 was in violation of the New Jersey Law Against Discrimination plaintiff's property rights in this public employment, and his Federal and State Constitutional rights and restoring plaintiff to his former position and classification as Laborer with back pay and full restoration of benefits and seniority.

2.   Declaring the purported Settlement Agreement and other documents to be obtained under duress and invalid.

3.   For compensatory damages for past and future income losses, mental, physical and emotional damages, loss of pension rights.

4.   For punitive damages.

5.   For attorney fees and costs incurred.

6.   Such other relief as the Court deems appropriate.

### THIRD COUNT

1.   Plaintiff repeats all the allegations of the First and Second Counts as if set forth.

2.   The defendants Borough, defendant Sickels, and John Does (1 through 7) terminated plaintiff or allowed the termination of plaintiff without compliance with the terms and time requirements of the Collective Bargaining Agreement.

3.    In particular, the said defendants failed and refused to comply with said CBA in summarily terminating plaintiff and failing to provide plaintiff a Grievance hearing and decision within the time periods specified in the Collective Bargaining Agreement.

4.    Upon finally being noticed to appear on April 15, 2015, at Borough Hall regarding his termination imposed on February 27, 2015, plaintiff believed that he would be represented by CWA Local 1075 and would have available and be allowed the right and opportunity to present his facts and position.

5.    On April 15, 2015 no hearing took place.    Instead plaintiff was presented by a Settlement Agreement and other documents already prepared by and or on behalf of the defendant Borough, and defendant Sickels, and informed and advised that a decision had already been made without a hearing to affirm and continue his termination of employment and he would have no further recourse or appeal.

6.    The acts and conducts of the defendants Borough, defendant Sickels, and defendants John Does (1 through 7) in so terminating plaintiff were not in compliance with the requirements and terms of the Collective Bargaining Agreement and said failure to comply invalidated the plaintiff's 2015 termination.

**WHEREFORE,** the Plaintiff demands Judgment against the Defendants Borough, Defendant Sickels, and defendants John Does (1 through 7) for the following relief:

1.    For an Order declaring plaintiff's termination of employment on February 27, 2015 was invalid and restoring plaintiff to his former position and classification as Laborer with back pay and full restoration of benefits and seniority.

2.    Declaring the purported Settlement Agreement and other documents to be obtained under duress and invalid.

3.    For compensatory damages for past and future income losses, mental, physical and emotional damages, loss of pension rights.

4.    For punitive damages.

23

5.    For attorney fees and costs incurred.

6.    Such other relief as the Court deems appropriate.

### FOURTH COUNT

1.    Plaintiff repeats all the allegations of the First through Third Counts as if set forth.

2.    The actions and conduct of the defendant Borough and defendant Sickels on April 15, 2016 in presenting the plaintiff --- an individual with a learning disability --- with a complicated "Settlement Agreement" and related documents and demanding its immediate execution was invalid and coercive.

3. As detailed previously, besides his learning disability, plaintiff was in fact misled and improperly placed under extreme duress by a number of actions of defendant Borough and defendant Sickels, including but not limited to:

(a)    Being denied and refused the ability to have an independent attorney present and/or to consult with an attorney. Plaintiff believed that the purpose of the meeting was for his Grievance hearing, that he would be represented by CWA Local 1075 and have available and allowed the right and opportunity to present his facts and position as to his learning disabilities, inability to obtain a CDL, and need for accommodation.

(b)    Being denied any unemployment benefits and any income since his termination date by reason of said defendants' false report and position to the State Labor Department, placing plaintiff in a position of having a family with no income and under extreme financial duress.

(c)    Being misled by said defendants as to being provided assistance and being able to meet the requirements for a CDL, when the said defendants knew or should have known the requirements for a CDL and that plaintiff would not be able to meet those requirements.

24

(d) Having conspired with the representatives of defendant CWA Local 1075 to misrepresent the rights that plaintiff was purportedly waiving, and that plaintiff would be given sufficient assistance and would be able to meet the requirements for a CDL, when all said defendants knew or should have known that plaintiff due to his learning disabilities and medication would not be able to meet said requirements.

(e) Jointly with the CWA Local 1075 representatives present pressuring and coercing plaintiff to execute said documents and stating to plaintiff that, if he did not, his termination would be confirmed and he would have no further recourse or appeal.

(f) Presenting plaintiff documents which falsely represented that plaintiff had had the required time period to review said documents with an attorney, when he was allowed no such time or review period.

4.   Those improper actions and duress, individually and collectively, combined with plaintiff's learning disabilities involving limited and delayed reading comprehension, resulted in the execution of this "Settlement Agreement" being involuntary, improperly under duress and invalid.

**WHEREFORE**, the Plaintiff demands Judgment against the Defendants Borough and Defendant Sickels for the following relief:

1.   For an Order declaring plaintiff's termination of employment on February 27, 2015 was invalid and restoring plaintiff to his former position and classification as Laborer with back pay and full restoration of benefits and seniority.

2.   Declaring the purported Settlement Agreement and other documents to be obtained under duress and invalid.

3.   For compensatory damages for past and future income losses, mental, physical and emotional damages, loss of pension rights.

4.   For punitive damages.

25

5.   For attorney fees and costs incurred.

6.   Such other relief as the Court deems appropriate.

## FIFTH COUNT

1.   Plaintiff repeats all the allegations of the First through Fourth Counts as if set forth.

2.   The newly imposed requirement that Public Works Department employees, and specifically individuals in the title and classification of "Laborer" had to obtain and possess a CDL was only enforced or imposed arbitrarily and not uniformly upon all such Public Works employees or persons having the job title and classification of "Laborer".

3.   Upon information and belief, certain other Public Works employees and/or "Laborers" who were personal and/or social friends of defendant Sickels did not obtain or possess a CDL and had no disability or handicap were excluded or exempted from such supposed requirement and allowed and permitted to continue with their employment.

4.   Those facts further detail and confirm that the supposed requirement was imposed and enforced arbitrarily, that possession of a CDL was not an essential job requirement and function of the position and classification held by plaintiff, and that a reasonable accommodation of plaintiff's learning disabilities and medication requirements that precluded his obtaining a CDL were available.

**WHEREFORE,** the Plaintiff demands Judgment against the Defendants Borough, Defendant Sickels, and defendants John Does (1 through 7) for the following relief:

1.   For an Order declaring plaintiff's termination of employment on February 27, 2015 was arbitrary and invalid and restoring plaintiff to his former position and classification as Laborer with back pay and full restoration of benefits and seniority.

2.   Declaring the purported Settlement Agreement and other documents to be obtained under duress and invalid.

26

3.  For compensatory damages for past and future income losses, mental, physical and emotional damages, loss of pension rights.

4.  For punitive damages.

5.  For attorney fees and costs incurred.

6.  Such other relief as the Court deems appropriate.

### SIXTH COUNT

1.  Plaintiff repeats all the allegations of the First through Fifth Counts as if set forth.

2.  After plaintiff was rehired by defendant Borough and recommenced employment as of April 18, 2015 as a Laborer in the Public Works Department, the plaintiff then continued his efforts to obtain the CDL as required by defendants Borough and Sickels.

3.  To that end, plaintiff expended substantial time and effort, mostly on his own time, studying the materials required so as to attempt to meet this imposed requirement.

4.  However, the defendant Borough in fact created difficulties to plaintiff's efforts to acquire this demanded CDL.

5.  At the first MVC test in July 2015, the defendants Borough and Sickels supplied a defective truck for the operational test. As a result, the MVC Inspector refused to conduct the test.

6.  At the time of the second MVC test, the plaintiff was advised by the MVC Inspector giving the test that the Study materials that had been supplied by the defendant Borough for plaintiff to prepare for the test were outdated and incomplete. As a consequence, plaintiff could not complete the test.

7.  At the third MVC test on March 10, 2016, despite his diligent study and preparation, plaintiff was not able to pass the CDL test due to his learning disabilities.

27

8.    As he had prior to the 2015 termination, since plaintiff's re-employment as of April 18, 2015 through March 10, 2016, plaintiff had been working as a janitor at Borough Hall and other Borough facilities.    In that employment there was no operation of heavy vehicles as any need for a CDL.

9.    On March 11, 2016, the defendant Sickels on behalf of defendant Borough again summarily terminated plaintiff's employment without any hearing or due process.

10.    Thereafter, plaintiff promptly filed a Grievance to the defendants Borough and Sickels and defendant CWA Local 1075 as per the Collective Bargaining Agreement requesting a hearing as per due process and the Collective Bargaining Agreement.

11.    In addition, plaintiff forwarded to defendants Borough/Sickels and defendants CWA Local 1075/Tauro additional evidence and documentation as to his learning disabilities, their impact and effect upon obtaining a CDL, and his need for reasonable accommodation.

12.    Thereafter, the defendants Borough and Sickels initially refused to hold and schedule any Grievance hearing and/or due process hearing on the termination.

13.    Further, as detailed earlier, the defendants Borough and Sickels again falsely reported to the State Department of Labor that plaintiff had voluntarily quit his employment on March 11, 2016, when in fact despite his best efforts he had been involuntarily terminated from employment by defendant Sickels.

14. After an extended delay, the defendants Borough/Sickels reconsidered their outright denial of a Step 3 Grievance hearing and conducted said Grievance hearing on June 21, 2016.

15.    Despite being fully aware and having adequate information and details about plaintiff's learning disabilities and need for reasonable accommodation, the defendants Borough and Sickels by letter dated July 15, 2016 denied plaintiff's Grievance and confirmed his termination of employment as of March 11, 2016.

28

16.   As detailed previously, plaintiff sought further appeal and review of this unjust and illegal termination through pursuit of Binding Arbitration, but the defendants CWA Local 1075 and Tauro eventually unilaterally refused to proceed and dismissed said Arbitration.

17.   The actions and conduct of defendant Borough and defendant Sickels, and defendants John Does (1 through 7) in again terminating plaintiff's employment with the defendant Borough as of March 11, 2016 was in violation of the New Jersey Law Against Discrimination for a number of reasons, including but not limited as follows:

(a)   The defendants failed to investigate the requirements for obtaining a CDL and whether plaintiff was physically and/or intellectually able to meet those requirements.

(b)   That the requirement for a CDL had never been an essential function for the position of Laborer.

(c)   That said defendants failed to respond or act upon plaintiff's notification of his learning disabilities and his need for reasonable accommodation.

(d)   Terminating plaintiff from employment for a disability/handicap that rendered it difficult or impossible for plaintiff to obtain a CDL.

**WHEREFORE,** the Plaintiff demands Judgment against the Defendants Borough and Defendant Sickels for the following relief:

1.   For an Order declaring plaintiff's termination of employment on March 11, 2016 was in violation of the New Jersey Law Against Discrimination and restoring plaintiff to his former position and classification as Laborer with back pay and full restoration of benefits and seniority.

2.   Declaring the purported 2015 Settlement Agreement and other documents to be obtained under duress and invalid.

29

3.   For compensatory damages for past and future income losses, mental, physical and emotional damages, loss of pension rights.

4.   For punitive damages.

5.   For attorney fees and costs incurred.

6.   Such other relief as the Court deems appropriate.

## SEVENTH COUNT

1. Plaintiff repeats all the allegations of the First through Sixth Counts as if set forth.

2.   The defendant Borough and defendant Sickels failed and refused to comply with plaintiff's constitutional rights and the terms and requirements of the Collective Agreement and related laws with regard to providing plaintiff a due process hearing prior to the summary termination of his public employment on March 11, 2016 and otherwise violating plaintiff's Federal and State Constitutional rights in his public employment.

**WHEREFORE**, the Plaintiff demands Judgment against the Defendants Borough, Defendant Sickels, and Defendants John Does (1 through 7) for the following relief:

1.   For an Order declaring plaintiff's termination of employment on March 11, 2016 was invalid and restoring plaintiff to his former position and classification as Laborer with back pay and full restoration of benefits and seniority.

2.   Declaring the purported Settlement Agreement and other documents to be obtained under duress and invalid.

3.   For compensatory damages for past and future income losses, mental, physical and emotional damages, loss of pension rights.

4.   For punitive damages.

5.   For attorney fees and costs incurred.

6.   Such other relief as the Court deems appropriate.

## EIGHTH COUNT

1.  Plaintiff repeats all the allegations of the First through Seventh Counts as if set forth.

2.  The defendant Borough and defendant Sickels summarily terminated plaintiff's employment on March 11, 2016 without compliance with the terms and time requirements of the Collective Bargaining Agreement.

3.  In particular, the said defendants failed and refused to comply with said CBA in summarily terminating plaintiff without cause and failing to provide plaintiff Grievance hearing and decision within the time periods specified in the Collective Bargaining Agreement and the law.

4.  The acts and conduct of the defendants Borough and Sickels in so terminating plaintiff's employment were not in compliance with the requirements and terms of the Collective Bargaining Agreement and the law and said failure to comply invalidated the March 11, 2016 termination.

**WHEREFORE,** the Plaintiff demands Judgment against the Defendants Borough, Defendant Sickels, and Defendants John Does (1 through 7) for the following relief:

1.  For an Order declaring plaintiff's termination of employment on March 11, 2016 invalid and restoring plaintiff to his former position and classification as Laborer with back pay and full restoration of benefits and seniority.

2.  Declaring the purported Settlement Agreement and other documents to be obtained under duress and invalid.

3.  For compensatory damages for past and future income losses, mental, physical and emotional damages, loss of pension rights.

4.  For punitive damages.

5.  For attorney fees and costs incurred.

6.  Such other relief as the Court deems appropriate.

## NINTH COUNT

1. Plaintiff repeats all the allegations of the First through Eighth Counts as if set forth.

2. The acts and conduct of defendant Borough and defendant Sickels detailed herein, in terminating plaintiff's career employment summarily and without cause twice (on February 27, 2015 and March 11, 2016) and in violation of plaintiff's legal and contractual rights and providing false reports to the State so as to deny plaintiff any income after his unjust termination, together with the other egregious acts and conduct against plaintiff constituted tortious conduct against plaintiff, including but not limited to the following:

   (a) Intentional and/or negligent infliction of mental and emotional distress.

   (b) Intentional and/or negligent interference with property rights and/or contractual rights in his employment and/or occupation.

   (c) Wrongful discharge in violation of public policy.

   (d) Wrongful discharge in violation of Company policies as set forth in the Collective Bargaining Agreement, Personnel Manual.

   (e) Breach of the duty of good faith and fair dealing with an employee.

3. As a consequence of this course of egregious conduct against plaintiff by defendant Borough and defendant Sickels, the plaintiff has been severely damaged and injured in that he has lost his career employment and has incurred and will continue to incur such losses; he has incurred severe emotional, mental and physical injury and distress; he has been without medical insurance and has been unable to obtain medications for his health conditions resulting in substantial injury; he has lost his future pension rights related to his Borough employment; and he has incurred and will continue to incur mental, emotional, and physical distress and injury.

32

**WHEREFORE**, the Plaintiff demands Judgment against the Defendants Borough, Defendant Sickels, and Defendants John Does (1 through 7) for the following relief:

1.  For an Order declaring plaintiff's termination of employment was invalid and restoring plaintiff to his former position and classification as Laborer with back pay and full restoration of benefits and seniority.

2.  Declaring the purported Settlement Agreement and other documents to be obtained under duress and invalid.

3.  For compensatory damages for past and future income losses, mental, physical and emotional damages, loss of pension rights.

4.  For punitive damages.

5.  For attorney fees and costs incurred.

6.  Such other relief as the Court deems appropriate.

### TENTH COUNT

1.  Plaintiff repeats all the allegations of the First through Ninth Counts as if set forth.

2.  The defendant CWA Local 1075 is a labor organization authorized and with the authority to be the collective bargaining agent pursuant to the N.J. Employer-Employee Relations Act, N.J.S.A. 34:13A-1 et seq. for the non-managerial employees of the Red Bank Public Works Department.

3.  The defendant CWA Local 1075 has for many years been the collective bargaining agent and representative for the non-managerial employees of the Borough of Red Bank, inclusive of plaintiff, and for many years has collected dues from each covered employee.

4.  As the authorized collective bargaining agent/organization the defendant CWA Local 1075 has the obligation and duty to fairly represent each employee in disputes or actions against that employee by the employer Borough.

33

5.    The defendant Tauro is the president and/or business agent of defendant CWA Local 1075 and is charged with investigating employer actions or directives affecting covered employees in CWA Local 1075, and has the duty and obligation to fairly represent said members/employees.

6.    The defendants John Does (1 through 7) and/or ABC Corporation (1 through 3) are persons and/or entities, present identities not known, who were involved assisted, or approved the improper actions and conduct of defendants CWA Local 1075 and/or defendant Tauro asserted herein.

7.    In approximately January 2014, the defendants Borough and Sickels unilaterally announced a purported requirement to be imposed on existing Public Works employees, including plaintiff and others similarly situated, of being required to obtain a CDL or be terminated.

8.    The defendant CWA Local 1075 and its president/business agent defendant Tauro had an affirmative obligation to investigate that purported requirement and/or negotiate and resist same in order to ascertain whether its union members, including plaintiff, had disabilities or handicaps that would impair or preclude their obtaining or being qualified for a CDL.

9.    In particular, as a labor organization within the scope of the Law Against Discrimination, the defendant CWA Local 1075 and defendant Tauro had the obligation to not to aid, assist, or allow the employer Borough to implement a requirement for a non-essential function of the employment that would cause disabled and/or handicapped employees to lose their employment and membership in the Union.

10.    In fact, given that the career employees in the Red Bank Public Works Department functioned largely as garbage truck loaders, janitors, or road maintenance workers doing hard physical work and had limited education, it would be reasonable to expect that a significant percentage of such career employees might have physical and/or intellectual disabilities or handicaps that would preclude or impair their ability to obtain a CDL.

34

11.   In fact, apparently in recognition of that, a number of municipal employers in and around Monmouth County which in recent years had effectuated an employment requirement for Public Works employees of having a CDL had expected or excluded current career employees from that as a requirement.

12.   Despite the fact that the defendant CWA Local 1075 and defendant Tauro knew or should have known that this CDL license was a non-essential function of the position of many Public Works employees, including plaintiff and that many such employees due to disabilities or handicaps would be unable to meet that new requirement, the defendant CWA Local 1075 and defendant Tauro did not grieve or contest the purported promulgation by defendants Borough/Sickels of this new requirement.

13.   Further, said defendant CWA Local 1075 and defendant Tauro did not have contact or communications with the effected Public Works employees, including plaintiff, to inform them of the requirements for a CDL and/or to investigate or determine whether said employees had some physical or mental disability or handicap, or were taking medications, that would impair or prevent their obtaining a CDL.

14.   After this notification of the CDL requirement was issued, the plaintiff on a number of occasions advised his Shop Steward that, due to his learning disabilities, he would likely not be able to pass the requirements for a CDL and/or needed the Union to request and pursue a reasonable accommodation.

15.   Pursuant to the Union's rules and procedures, the plaintiff (and others in his position) were directed and required to make their inquiries and communications to their Shop Steward, who was to pass those on to the higher Union officials as per the chain of command.

16.   Upon being summarily terminated on February 27, 2015, plaintiff promptly contacted CWA Local 1075 and filed a Grievance, anticipating and expecting defendant CWA Local 1075 and defendant Tauro would pursue the Grievance and secure appropriate relief, given his learning disabilities and handicaps and his 15 years of loyal membership in the Union and employment with the Borough.

35

17.   However, after his February 27, 2015 termination, the plaintiff had substantial difficulty in communicating and reaching defendant Tauro, who failed to contact or interview plaintiff.  Plaintiff continued to periodically contact his Shop Steward, advising him again of his disabilities, need for reasonable accommodation, and need for a timely Grievance hearing to contest the termination action against him.

18.   Eventually, well after the time limitation for a Step 3 Grievance hearing, plaintiff was informed by the defendant CWA Local 1075/Tauro to appear at Borough Hall on April 15, 2015 for a meeting.  Plaintiff's request that his own attorney be allowed to be present was denied.

19.   At that meeting with defendant Borough and defendant Sickels, the defendants CWA Local 1075 and Tauro did not present his Grievance or position.   Plaintiff was presented with a prepared "Settlement Agreement" and other documents and was pressured by the defendant CWA Local 1075 and defendant Tauro to sign same immediately.   As detailed by the facts and reasons detailed earlier, this "Settlement Agreement" was executed under improper and extreme duress and without the defendants properly presenting to plaintiff the requirements to obtain a CDL and that he would not be qualified or able to obtain same because of his disabilities/handicap and medications he was required to take.

20.   The defendant CWA Local 1075 --- in failing to pursue plaintiff's Grievance and challenge to his termination and instead pressuring him and forcing him to sign a "Settlement Agreement" in which he resigns his employment, gives up 15 years of seniority and pay level, and accepts a temporary "re-hire" at base level pay with a requirement and condition that he was doomed not to be able to meet --- clearly breached its duty of fair representation owed to plaintiff.

21.   The conduct of defendant CWA Local 1075 and defendant Tauro in failing to pursue a challenge to plaintiff's termination and coercing him into this agreement effectively waiving all his rights was clearly arbitrary, discriminatory and in bad faith as well as intentional, discriminatory and unrelated to legitimate union objectives.

36

22.   To the extent discernable, the actions of defendant CWA Local 1075 and defendant Tauro were part of concerted action with the defendants Borough and Sickels to terminate or remove disabled or handicapped employees in contravention to the NJLAD.

23.   The actions and conduct of the defendant CWA Local 1075 and defendant Tauro --- in failing and refusing to challenge the promulgation of the arbitrary and unfair requirement for a CDL, failing to investigate its impact upon Public Works Employees including plaintiff who have physical or mental disabilities, failing to act or respond to plaintiff's requests for assistance and/or accommodation, failing to timely pursue a Grievance challenging plaintiff's improper February 27, 2015 termination, and then conspiring with defendants Borough and Sickels to pressure and coerce plaintiff into executing an unfair coerced "Agreement" waiving all his rights and doomed to result in his further termination and other related actions as detailed --- clearly constitute an egregious breach of the duty of fair representation owed by defendant CWA Local 1075 and defendant Tauro.

24.   As a result of said defendants' improper conduct and breach of their duty, plaintiff incurred the February 27, 2015 termination of his employment, incurred his substantial loss of income and benefits, was thereafter set up to be and was terminated again on March 11, 2016, has been without employment and has and will incur a tremendous loss of lifetime income and loss of pension rights and benefits, and has incurred extreme and substantial physical, mental and emotional distress and losses.

**WHEREFORE,** the Plaintiff demands Judgment against the Defendants CWA Local 1075, Defendant Tauro, and Defendants John Does (1 through 7) and ABC Corporation (1 through 3) for the following relief:

1.   For an Order declaring plaintiff's termination of employment on February 27, 2015 and March 11, 2016 was in violation of the New Jersey Law Against Discrimination and restoring plaintiff to his former position and classification as Laborer with back pay and full restoration of benefits and seniority.

37

2.  For an Order declaring that said defendants had breached their duty of fair representation and ordering appropriate relief and/or damages.

3.  Declaring the purported 2015 Settlement Agreement and other documents to be obtained under duress and invalid.

4.  For compensatory damages for past and future income losses, mental, physical and emotional damages, loss of pension rights.

5.  For punitive damages.

6.  For attorney fees and costs incurred.

7.  Such other relief as the Court deems appropriate.

### ELEVENTH COUNT

1.  Plaintiff repeats all the allegations of the First through Tenth Counts as if set forth.

2.  After the plaintiff resumed employment as a Laborer on or about April 18, 2015 as per the invalid "Settlement Agreement", plaintiff performed his work and duties satisfactorily and well.

3.  As detailed earlier, the plaintiff thereafter made a good faith effort to pass the testing and operational requirements to obtain a CDL.

4.  As also detailed, plaintiff's first two testing efforts were aborted due to the actions of defendant Borough in (1) providing a defective truck for the test, and (2) providing plaintiff outdated and incomplete study material.

5.  Plaintiff again took the MVC operational test on March 10, 2016 and apparently, despite his extensive study effort, did not pass because a few of his answers were judged incorrect.

6.  On March 11, 2016, the defendant Sickels on behalf of defendant Borough summarily terminated plaintiff's employment, without any due process or hearing.

38

7.    Thereafter, the defendants CWA Local 1075 and defendant Tauro initially failed and refused to properly and diligently pursue plaintiff's Grievance of this termination of employment.

8.    The defendant Borough and defendant Sickels initially refused to conduct any Grievance hearing and took the positon that the March 11, 2016 termination was final.

9.    Eventually, well after the time periods for processing the Grievance and conducting the Step 3 internal Grievance hearing had lapsed, the defendants Borough/Sickels changed their position and advised a Grievance hearing would be held.

10.    The plaintiff requested that his own attorney be permitted to appear on his behalf, or in the alternative simply be allowed to be present. However, the defendant CWA Local 1075 and defendant Tauro refused to permit plaintiff's attorney to even be present at the proceeding.

11.    The plaintiff supplied to the defendants CWA Local 1075/Tauro detailed evidence and even a witness --- his former teacher at the Harbor School --- to further establish his learning disabilities and need for accommodation. The defendants CWA Local 1075 and Tauro failed and refused to present such evidence or testimony.

12.    The Step 3 Grievance hearing was held by defendant Sickels as hearing officer on June 21, 2016. The defendant Sickels issued a written decision on July 15, 2016 denying plaintiff's Grievance and confirming the March 11, 2016 termination of employment.

13.    As per the Collective Bargaining Agreement, the defendant CWA Local 1075 had the right and ability to obtain binding arbitration by an independent outside Arbitrator as to plaintiff's termination.

14.    The plaintiff timely requested that the defendant CWA Local 1075 pursue the Arbitration.

15.    Eventually, the defendant CWA Local 1075 advised that it had filed a Request/Application with the Public Employment Relations Commission (PERC) for arbitration, and an arbitrator had been appointed, but that the defendant CWA Local 1075 and

defendant Tauro were reserving decision on actually going forward with the Arbitration.

16.    Thereafter, there were a number of communications by plaintiff with defendant CWA Local 1075 and defendant Tauro as to his position and the pending Arbitration.  In addition, plaintiff's private attorney was also in communication with the attorney for CWA Local 1075, who was theoretically the attorney who would represent CWA Local 1075 and the plaintiff Grievant in the arbitration hearing.

17.    In the course of those communications, plaintiff conveyed his position that part of the problem was the previous failure of CWA Local 1075 and Tauro to fairly represent plaintiff and other effected Laborers in challenging the CDL requirement and his earlier termination, the unfair and coerced Settlement Agreement that was proffered and endorsed by defendant CWA Local 1075 and defendant Tauro, and that the defendants had not previously fairly represented him.

18.    Eventually, plaintiff was informed that the Arbitration hearing was scheduled and would occur on January 25, 2017.  The defendant CWA Local 1075 and defendant Tauro directed and required that plaintiff's personal attorney not attend or to be present.

19.    On or about January 18, 2017, a few days prior to the scheduled arbitration, the defendant CWA Local 1075 through its attorney notified plaintiff that the arbitration had been adjourned to a date in late February 2017.

20.    Thereafter, on or about January 21, 2017 the defendant CWA Local 1075 and defendant Tauro through their attorney notified plaintiff that the defendant CWA Local 1075 had decided it would not proceed with the Arbitration.  The defendant CWA Local 1075 and defendant Tauro further advised that plaintiff would not be permitted to proceed on his own with the Arbitration with his own attorney unless (1) he executed a full Release as to said defendants releasing them of all claims arising from their actions as to plaintiff's terminations and (2) that he accept responsibility to pay all the Arbitrator costs to be incurred.

21.   The plaintiff responded that he would proceed with the Arbitration with his own attorney without the defendants incurring the attorney costs, but that he had no funds to pay the Arbitrator costs.   He further responded that he would not execute the Release demanded.

22.   Thereupon, the defendant CWA Local 1075 and defendant Tauro determined to and did cancel the Arbitration, leaving the plaintiff without any further Union representation or avenue of appeal or recourse through arbitration to dispute or challenge his termination of employment.

23.   The actions and conduct of the defendant CWA Local 1075 and defendant Tauro --- in utilizing the right and ability of the Union to proceed to arbitration as a means to coerce and force plaintiff to waive his rights against said defendants for their earlier violations of the LAD and their breaches of their duty of fair representation, and then their withdrawal of plaintiff's ability and right to have his termination considered and judged by an independent arbitrator --- were closely invalid and illegal under the LAD as retaliatory actions for plaintiff having asserted his rights as a handicapped person under the LAD.

24.   Further, the conduct of the defendant CWA Local 1075 and defendant Tauro by their last minute notice after the arbitrator was appointed in withdrawing from pursuit of Arbitration as to the termination of plaintiff's career employment and utilizing that withdrawal and foreclosure of plaintiff's ability to continue on his own to Arbitration for their private benefit and purposes to attempt to extort and force plaintiff to waive and release his claims for their prior actions and failures was arbitrary, discriminatory and in bad faith, as well as intentional, discriminatory and unrelated to legitimate union objectives.   Said actions were further in contravention and violation of the LAD, and public policy.

25.   As such, the actions and conduct of defendant CWA Local 1075, defendant Tauro, and defendants John Does (1 through 7) and ABC Corporation (1 through 3) in failing and refusing to fairly represent the plaintiff as to his March 11, 2016 termination and his subsequent Grievance and pursuit of arbitration constitute an egregious breach of their duty of fair representation owed to plaintiff.

41

26.   As a result of said defendants' improper conduct and breach of their duty, plaintiff incurred the March 11, 2016 termination of his employment, has incurred his substantial loss of income and benefits, has been without employment and has and will incur a tremendous loss of lifetime income and loss of pension benefits and rights, and has and will incur substantial physical, mental and emotional distress and damages.

**WHEREFORE,** the Plaintiff demands Judgment against the Defendants CWA Local 1075, Defendant Tauro, and Defendants John Does (1 through 7) and ABC Corporation (1 through 3) for the following relief:

1.   For an Order declaring plaintiff's termination of employment on March 11, 2016 was in violation of the New Jersey Law Against Discrimination and restoring plaintiff to his former position and classification as Laborer with back pay and full restoration of benefits and seniority.

2.   For an Order declaring that said defendants had breached their duty of fair representative and ordering appropriate relief and/or damages.

3.   Declaring the purported Settlement Agreement and other documents to be obtained under duress and invalid.

4.   For compensatory damages for past and future income losses, mental, physical and emotional damages, loss of pension rights.

5.   For punitive damages.

6.   For attorney fees and costs incurred.

7.   Such other relief as the Court deems appropriate.

### TWELFTH COUNT

1.   Plaintiff repeats all the allegations of the First through Eleventh Counts as if set forth.

2.   The acts and conduct of the defendant CWA Local 1075, defendant Tauro, and defendants John Does (1 through 7) and ABC Corporation (1 through 3) in failing to fairly represent plaintiff with regard to his rights to retain his employment and to properly represent him with regard to not be arbitrarily terminated because of his disabilities, acting in concert with the defendants Borough/Sickels so as to avoid independent review and challenge to the Borough's employment actions in contravention to the LAD, and the other egregious acts and conduct, or failure to act as per their responsibility and obligations, constitute tortious conduct against plaintiff, including but not limited to:

(a)   Intentional and/or negligent infliction of mental and emotional distress.

(b)   Intentional and/or negligent interference with property rights and/or contractual rights in his employment and/or occupation.

(c)   Cooperating and/or assisting in plaintiff's wrongful discharge in violation of public policy.

(d)   Cooperating and/or assisting in plaintiff's wrongful discharge in violation of Red Bank terms and policies of employment set forth in the Collective Bargaining Agreement, Personnel Manual, and other relevant documents.

(e)   Breach of their duty of good faith and fair dealing with a member of said Union.

3.   As a consequence of the acts and conduct of said defendants, the plaintiff has been severely damaged and injured in that he has lost his career employment and has incurred and will continue to incur such monetary losses and damages, he has incurred severe emotional, mental, and physical injury and distress; he has been without medical insurance and has been unable to obtain medications for his health condition resulting in substantial injury; he has lost future pension rights related to his Borough employment; and he has incurred and will continue to incur mental, emotional, and physical distress and injury.

43

**WHEREFORE,** the Plaintiff demands Judgment against the Defendants CWA Local 1075, Defendant Tauro, and Defendants John Does (1 through 7) and ABC Corporation (1 through 3) for the following relief:

1.  For an Order declaring plaintiff's termination of employment on February 27, 2015 and March 11, 2016 was in violation of the New Jersey Law Against Discrimination and restoring plaintiff to his former position and classification as Laborer with back pay and full restoration of benefits and seniority.

2.  For an Order declaring that said defendants had breached their duty of fair representative and ordering appropriate relief and/or damages.

3.  Declaring the purported Settlement Agreement and other documents to be obtained under duress and invalid.

4.  For compensatory damages for past and future income losses, mental, physical and emotional damages, loss of pension rights.

5.  For punitive damages.

6.  For attorney fees and costs incurred.

7.  Such other relief as the Court deems appropriate.

BERNARD M. REILLY LLC
Attorney for Plaintiff

BY: _____
BERNARD M. REILLY

### CERTIFICATION PURSUANT TO R. 4:5-1

I certify that the dispute about which I am suing is not the subject of any other action pending in any other Court or a pending arbitration proceeding to the best of my knowledge and belief. Also, to the best of my knowledge and belief no other

44

action or arbitration proceeding is contemplated.  Further, other than the parties set forth in this Complaint, I know of no other parties that should be made a part of this lawsuit.  In addition, I recognize my continuing obligation to file and serve on all parties and the Court an amended certification if there is a change in the facts stated in this original certification.

## CERTIFICATION PURSUANT TO R. 1:38-7(b)

I certify that confidential personal identifiers have been redacted from documents now submitted to the Court, and will be redacted from all documents submitted in the future.

## JURY DEMAND

Plaintiff Jason A. Burke hereby demands trial by jury of all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to the provision of R. 4:25-4, the Court is advised that Bernard M. Reilly, Esq. is hereby designated by Plaintiff as their trial counsel in the above captioned matter.

BERNARD M. REILLY LLC
Attorney for Plaintiff

BY _____
BERNARD M. REILLY

Dated:  February 23, 2017

45

Appendix XII-B1

| | CIVIL CASE INFORMATION STATEMENT (CIS) | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|---|



**CIVIL CASE INFORMATION STATEMENT**
**(CIS)**

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed

**FOR USE BY CLERK'S OFFICE ONLY**
PAYMENT TYPE:  ☐ CK ☐ CG ☐ CA
CHG/CK NO.
AMOUNT:
OVERPAYMENT:
BATCH NUMBER:

| ATTORNEY / PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| Bernard M. Reilly | (732) 530-7777 | Monmouth |

| FIRM NAME (if applicable) | DOCKET NUMBER (when available) |
|---|---|
| Bernard M. Reilly, LLC | |

| OFFICE ADDRESS | DOCUMENT TYPE |
|---|---|
| 90 Maple Avenue | Complaint |
| Red Bank, New Jersey 07701 | JURY DEMAND   ■ YES   ☐ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
|---|---|
| Jason A. Burke | Jason A. Burke v. Borough of Red Bank; Stanley J. Sickels, officially and individually; Communication Workers of America (CWA) Local 1075, AFL-CIO; Kevin Tauro;JohnDoes(1through7);anABCCorporation |

| CASE TYPE NUMBER (See reverse side for listing) | HURRICANE SANDY RELATED? | IS THIS A PROFESSIONAL MALPRACTICE CASE?   ☐ YES   ■ NO |
|---|---|---|
| 618 | ☐ YES   ■ NO | IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |

| RELATED CASES PENDING? | IF YES, LIST DOCKET NUMBERS |
|---|---|
| ☐ YES   ■ No | |

| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known) | |
|---|---|---|
| ■ YES   ☐ No | | ☐ NONE   ■ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?   ■ YES   ☐ No | IF YES, IS THAT RELATIONSHIP:   ■ EMPLOYER/EMPLOYEE   ☐ FAMILIAL   ☐ FRIEND/NEIGHBOR   ☐ BUSINESS   ☐ OTHER (explain) |
|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?   ☐ YES   ☐ No |
|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

| | DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?   ☐ YES   ■ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|---|
| | WILL AN INTERPRETER BE NEEDED?   ☐ YES   ■ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE:



**Side 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

---

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I - 150 days' discovery**
- 151  NAME CHANGE
- 175  FORFEITURE
- 302  TENANCY
- 399  REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
- 502  BOOK ACCOUNT (debt collection matters only)
- 505  OTHER INSURANCE CLAIM (including declaratory judgment actions)
- 506  PIP COVERAGE
- 510  UM or UIM CLAIM (coverage issues only)
- 511  ACTION ON NEGOTIABLE INSTRUMENT
- 512  LEMON LAW
- 801  SUMMARY ACTION
- 802  OPEN PUBLIC RECORDS ACT (summary action)
- 999  OTHER (briefly describe nature of action)

**Track II - 300 days' discovery**
- 305  CONSTRUCTION
- 509  EMPLOYMENT (other than CEPA or LAD)
- 599  CONTRACT/COMMERCIAL TRANSACTION
- 603N AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
- 603Y AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
- 605  PERSONAL INJURY
- 610  AUTO NEGLIGENCE – PROPERTY DAMAGE
- 621  UM or UIM CLAIM (includes bodily injury)
- 699  TORT – OTHER

**Track III - 450 days' discovery**
- 005  CIVIL RIGHTS
- 301  CONDEMNATION
- 602  ASSAULT AND BATTERY
- 604  MEDICAL MALPRACTICE
- 606  PRODUCT LIABILITY
- 607  PROFESSIONAL MALPRACTICE
- 608  TOXIC TORT
- 609  DEFAMATION
- 616  WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
- 617  INVERSE CONDEMNATION
- 618  LAW AGAINST DISCRIMINATION (LAD) CASES

**Track IV - Active Case Management by Individual Judge / 450 days' discovery**
- 156  ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
- 303  MT. LAUREL
- 508  COMPLEX COMMERCIAL
- 513  COMPLEX CONSTRUCTION
- 514  INSURANCE FRAUD
- 620  FALSE CLAIMS ACT
- 701  ACTIONS IN LIEU OF PREROGATIVE WRITS

**Multicounty Litigation (Track IV)**

| | |
|---|---|
| 271  ACCUTANE/ISOTRETINOIN | 292  PELVIC MESH/BARD |
| 274  RISPERDAL/SEROQUEL/ZYPREXA | 293  DEPUY ASR HIP IMPLANT LITIGATION |
| 281  BRISTOL-MYERS SQUIBB ENVIRONMENTAL | 295  ALLODERM REGENERATIVE TISSUE MATRIX |
| 282  FOSAMAX | 296  STRYKER REJUVENATE/ABG II MODULAR HIP STEM COMPONENTS |
| 285  STRYKER TRIDENT HIP IMPLANTS | 297  MIRENA CONTRACEPTIVE DEVICE |
| 286  LEVAQUIN | 299  OLMESARTAN MEDOXOMIL MEDICATIONS/BENICAR |
| 287  YAZ/YASMIN/OCELLA | 300  TALC-BASED BODY POWDERS |
| 289  REGLAN | 601  ASBESTOS |
| 290  POMPTON LAKES ENVIRONMENTAL LITIGATION | 623  PROPECIA |
| 291  PELVIC MESH/GYNECARE | |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics.

**Please check off each applicable category** ☐ **Putative Class Action** ☐ **Title 59**

---