NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

JASON A. BURKE,

            Plaintiff,

       v.

BOROUGH OF RED BANK, *et al.,*

            Defendants.

Civ. Action No. 17-1800-BRM-DEA

**OPINION**

---

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Borough of Red Bank ("Red Bank") and Stanley J. Sickels's ("Sickels") (together with Red Bank, "Borough Defendants") Motion for Partial Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c).[1] (ECF No. 8.) Plaintiff Jason A. Burke ("Burke") opposes the motion. (ECF No. 11.) For the reasons set forth below, Borough Defendants' motion (ECF No. 8) is **GRANTED**.

**I.   PROCEDURAL AND FACTUAL BACKGROUND**

For the purposes of this motion, the Court accepts the factual allegations in the Complaint as true. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008); *see Newton v. Greenwich Twp.*, 2012 WL 3715947, at *2 (D.N.J. Aug. 27, 2012) ("The difference between a motion to

---

[1] Defendants Communications Workers of America Local 1075, AFL-CIO ("CWA Local 1075") and CWA Local 1075 President and Business Agent Kevin Tauro ("Tauro") (together with CWA Local 1075, "Union Defendants") did not file papers in connection with this motion but are referred to herein.

dismiss pursuant to Rule 12(b)(6) and Rule 12(c) is only a matter of timing and the Court applies the same standard to a Rule 12(c) motion as it would to a Rule 12(b)(6).").

This matter arises from Burke's termination from the Red Bank Department of Public Works ("DPW"), where he was employed from about May 24, 2001, until his termination on March 11, 2016. (Compl. (ECF No. 2) ¶¶ 12, 56.) Burke claims to be disabled, was classified as learning disabled early in his education, and attended a school for children with learning disabilities. (*Id.* ¶¶ 8-9.) Among Burke's disabilities are:

> difficulties in reading comprehension, comprehending written instruction, and doing basic math. His learning disability includes and involves, among other problems, his reversing numbers and letters in reading documents . . . . [He] also has delayed auditory processing, which basically results in the need for instructions to be repeated to him multiple times. At times he has difficulty in concentrating for extended periods of time, due to attention deficit disorder.

(*Id.* ¶ 10.) Burke worked for the DPW in the position of "Laborer," which entailed working on the rear of a garbage truck and loading household trash into the truck, and working as a janitor in municipal buildings. (*Id.* ¶ 16.)

**A. Burke is Required to Obtain a Commercial Driver's License**

In January 2014, Sickels, who at all relevant times served as Red Bank's Borough Administrator, issued a directive (the "Directive") stating all DPW employees must obtain a Commercial Driver's License (CDL) by January 1, 2015, or their employment would be terminated. (*Id.* ¶¶ 3, 18.) Sickels issued the Directive without any investigation into whether DPW employees were mentally or physically capable of obtaining a CDL. (*Id.* ¶ 19.) Burke alleges the New Jersey State Motor Vehicle Commission's ("MVC") process for issuing a CDL "include[s] written examinations as to traffic laws and heavy vehicle operations systems, oral testing by MVC

inspectors on heavy vehicle equipment, parts, and operational characteristics, and a driving test by MVC inspectors on such vehicles." (*Id.* ¶ 20.) Burke claims Borough Defendants implemented the Directive without negotiating with the CWA Local 1075, which is the union that represented the DPW's blue collar employees. (*Id.* ¶¶ 4, 22.) Further, the Directive was not made part of the DPW's job description for the Laborer role, included in the Personnel Manual for DPW employees, or added to the Collective Bargaining Agreement ("CBA") between Red Bank and CWA Local 1075 as a term and condition of employment. (*Id.* ¶ 22.)

Burke alleges the assistance and instruction Borough Defendants offered was minimal and/or inadequate. (*Id.* ¶ 24.) Burke informed his manager and supervisor—the Director of the DPW—it would be difficult or impossible for him to obtain a CDL due to his learning disabilities. (*Id.* ¶ 25.) He asked if he could have a reasonable accommodation and/or deferral of the requirement. (*Id.*) DPW rules prohibited Burke from communicating directly to Sickels or Red Bank's governing body. (*Id.* ¶ 26.) Similarly, CWA Local 1075 rules prohibited Burke from speaking to Tauro or any union official other than Burke's shop steward. (*Id.* ¶ 27.)

### B. Burke's Initial Termination

Due to his learning disabilities, Burke could not comprehend the study materials and did not obtain a CDL by the January 2015 deadline. (*Id.* ¶ 28.) Although Borough Defendants never responded to Burke's notifications regarding his learning disabilities and need for accommodation, Sickels notified Burke he would be terminated effective February 27, 2015. (*Id.* ¶ 29.) Burke's termination was implemented without any grievance and/or due process hearing. (*Id.*) Around February 27, 2015, Burke filed a grievance with Red Bank and CWA Local 1075 seeking a

grievance hearing and adjudication of his termination. (*Id.* ¶ 30.) The CBA[2] Burke obtained from Red Bank indicated he had a right to file the grievance. (*Id.* ¶ 33.) Though the CBA required Sickels to conduct an informal hearing within five days of receipt of Burke's grievance and respond in writing within ten days of the hearing, Burke did not hear from Borough Defendants until he was invited to attend a meeting on April 15, 2015. (*Id.* ¶¶ 34, 39.)

While Burke awaited his hearing, he attempted to file a claim for unemployment benefits from the State of New Jersey, Department of Labor ("Labor Department"). (*Id.* ¶ 36.) He alleges Sickels, on behalf of Red Bank, falsely reported to the Labor Department that Burke had voluntarily left his employment. (*Id.* ¶ 37.) The Labor Department then denied Burke's application for benefits. (*Id.*) Burke had no income while he awaited his grievance hearing. (*Id.* ¶ 38.)

**C. Burke is Rehired**

On April 15, 2015, Burke attended what he believed would be a grievance hearing, but instead Red Bank representatives presented him with several documents, which were a "Settlement Agreement," "General Release and Waiver," and "Acknowledgement" (collectively, the "Settlement Agreement"). (*Id.* ¶¶ 39-40.) Burke did not receive any opportunity to review the documents, and he did not comprehend them. (*Id.* ¶ 41.) Red Bank representatives and CWA Local 1075 representatives who were at the meeting told Burke if he did not immediately sign the documents, his termination would be upheld and he would have no right to challenge his termination. (*Id.*) The Settlement Agreement and other documents stated Burke was voluntarily

---

[2] In February or March of 2015, Burke filed an OPRA request to obtain an executed copy of the CBA between Red Bank and CWA Local 1075, but he received only a copy of an expired CBA for 2005 through 2008. (ECF No. 2 ¶¶ 31-32.) Burke also received several "Memorand[a] of Agreement" and "Sidebar Agreements" that addressed change and revisions to the 2005-2008 CBA. (*Id.* ¶ 32.) He alleges he never received a current, readily understandable CBA. (*Id.*)

4

resigning from his position with the DPW, and he was releasing any and all claims and grievances against Red Bank. (*Id.* ¶ 42.) The documents further stated Burke was eligible to be rehired to the position of "Laborer I," on probationary status, and would forfeit the seniority and advanced pay rate and benefits he had accrued during his fifteen years with the DPW. (*Id.*) Finally, the documents provided if Burke failed to obtain a CDL within the ninety-day probationary period he would be terminated without right to challenge the termination. (*Id.*) Burke claims Union Defendants, despite knowing of his learning disabilities, assured him he would get his job back and signing the documents was his only option. (*Id.* ¶ 43.) Burke asserts he was under duress because he had not received any income since his termination, so signed the documents. (*Id.* ¶ 44, 46.) Burke claims despite the fact he was denied the opportunity to contact his attorney during the meeting, the documents state Burke had twenty-one days to review them. (*Id.* ¶ 45.)

### D. Burke's Second Termination

Around April 18, 2015, Burke resumed working for the DPW but he was reduced to Step 1 of the Pay/Senior Scale, which represented a substantial reduction of income from his pre-termination salary. (*Id.* ¶ 47.) Red Bank assigned a senior DPW employee with a CDL to periodically instruct Burke regarding the test and requirements. (*Id.* ¶ 51.) In July 205, Burke attended a test with the MVC. (*Id.* ¶ 52.) Burke asserts the MVC inspector refused to allow him to take the test, because the heavy vehicle Red Bank supplied for Burke to take the test was in a defective and unsafe condition. (*Id.* ¶ 53.) Burke alleges Red Bank required him to pay a $125.00 fee for a second test. (*Id.* ¶ 54.) Burke claims at the second test date, the MVC inspector told Burke the study materials Red Bank had given him were outdated. (*Id.*) Burke did not pass the examination portion of the test. (*Id.*)

Burke contends Red Bank again required him to pay the $125.00 fee for the third exam. (*Id.* ¶ 55.) Burke asserts he also received updated study materials, but despite his best efforts to prepare, he did not pass. (*Id.*) On March 11, 2016, the day after the third MVC test, Sickels notified Burke he was terminated, effective immediately, for failing to obtain a CDL. (*Id.* ¶ 56.) Burke maintains he filed a grievance with Borough Defendants and CWA Local 1075, but Borough Defendants refused to schedule and conduct a grievance hearing. (*Id.* ¶¶ 57-58.) Burke alleges neither Borough Defendants nor Union Defendants took steps toward providing him with a hearing. (*Id.* ¶¶ 67.)

Burke claims Sickels again falsely reported to the Labor Department that Burke had voluntarily left his job. (*Id.* ¶ 59.) On April 13, 2016, Burke was required to file an appeal of the denial of unemployment benefits. (*Id.* ¶ 61.) On June 2, 2016, the Labor Department's Appeal Tribunal overturned the denial of Burke's benefits. (*Id.* ¶ 63.) On June 21, 2016, Borough Defendants appealed to the next Labor Department administrative level and again falsely claimed Burke had left the DPW by his own decision. (*Id.* ¶ 64.) Eventually, Borough Defendants withdrew their appeal, bur Burke did not receive unemployment benefits for the duration of the appeals process. (*Id.* ¶¶ 65-67.)

Months after Burke's second termination, Borough Defendants scheduled a grievance hearing for June 21, 2016. (*Id.* ¶ 70.) Burke alleges Union Defendants did not properly prepare and investigate his case before the hearing. (*Id.* ¶ 71.) Burke claims at the hearing, Union Defendants refused to present evidence of Burke's learning disabilities and his fitness to obtain a CDL. (*Id.* ¶¶ 72.) He asserts Union Defendants also failed to argue a CDL was not essential to the Laborer position, or that Burke should receive a reasonable accommodation for his condition. (*Id.*) Sickels denied Burke's grievance in a letter dated July 15, 2016. (*Id.* ¶ 73.)

Burke sought Union Defendants' assistance to pursue arbitration. (*Id.* ¶ 75.) In December 2016, Burke learned from Union Defendants a binding arbitration hearing was scheduled for January 25, 2017. Burke sought Union Defendants' assistance to pursue arbitration, but despite several communications, Union Defendants did not adequately represent Burke's interests. (*Id.* ¶ 85.) On January 20, 2017, CWA Local 1075 informed Burke the arbitration hearing had been postponed one month. (*Id.* ¶ 86.) On January 23, 2017, Burke was informed Union Defendants had decided not to pursue his grievance to binding arbitration. (*Id.* ¶ 75.) Burke alleges CWA Local 1075 told him Union Defendants would authorize him to proceed to arbitration on his own and with his own representation if he: (1) executed a full release of any claims against Union Defendants and (2) paid all costs associated incurred and to be incurred for his grievance and for the arbitration. (*Id.* ¶ 87.) Burke told Union Defendants he would pay for his own representation but would not execute the release Union Defendants had sent him. (*Id.* ¶ 88.) Union Defendants then withdrew from the arbitration, and Burke was left without any contractual or administrative means to challenge his termination. (*Id.* ¶¶ 89-90.)

While he was awaiting arbitration, Burke claims he continued to attempt to obtain a CDL through a private CDL training facility. Burke maintains he sought Union Defendants' assistance to pursue arbitration, but despite several communications Union Defendants did not adequately represent Burke's interests. (*Id.* ¶¶ 78-79.) The CDL training facility required Burke to provide information regarding his disabilities and the prescription medications he takes to treat them. (*Id.* ¶¶ 79.) Burke alleges the CDL training facility reviewed the information concerning his conditions and medications, and concluded his disabilities disqualify him from obtaining a CDL unless Burke obtained a medical clearance letter and/or waiver from the MVC. (*Id.* ¶ 80.)

On February 24, 2017, Burke filed the Complaint in the Superior Court of New Jersey, Law Division, Monmouth County (Civ. A. No. MON-L-661-17) asserting claims[3] for wrongful termination pursuant to the New Jersey Law Against Discrimination, as amended, N.J.S.A. 10:5-1, *et seq.* ("NJLAD") (Count One); violations of Burke's rights to procedural due process under the United States and New Jersey constitutions related to his first termination (Count Two); wrongful termination in breach of the CBA (Counts Three and Eight); coercion in relation to the execution of the Settlement Agreement (Count Four); discriminatory treatment under NJLAD (Count Five); violations of Burke's rights to procedural due process under the United States and New Jersey constitutions related to his second termination (Count Six); violation of Burke's right to procedural due process under the CBA (Count Seven); breach of the duty of good faith and fair dealing under the CBA (Count Nine); breach of various terms of the CBA against Union Defendants (Counts Ten and Eleven); and negligent or intentional infliction of emotional distress against Union Defendants (Count Twelve). On March 17, 2017, Borough Defendants filed the Notice of Removal. (ECF No. 1.) On May 4, 2017, Borough Defendants filed the Motion for Judgment on the Pleadings. (ECF No. 8.)

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The difference between a motion to dismiss pursuant to Rule 12(b)(6) and Rule 12(c) is only a matter of timing and the Court applies the same standard to a Rule 12(c) motion as it would to a Rule 12(b)(6)." *Newton*, 2012 WL 3715947, at *2; *see also Muhammad v. Sarkos*, 2014 WL

---

[3] Unless otherwise noted, all claims are pled against both Borough Defendants and Union Defendants.

4418059 (D.N.J. Sept. 8, 2014) ("Where a defendant's motion is one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), it is treated under the same standards as a Rule 12(b)(6) motion where it alleges that a plaintiff has failed to state a claim.") (citing *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991); *Gebhart v. Steffen*, 2014 WL 3765715, at *2 (3d Cir. Aug. 1, 2014)).

"In deciding a Rule 12(c) motion, the court does not consider matters outside the pleadings" and must "view[] the complaint 'in the light most favorable to the plaintiff' . . . [to determine whether] 'there is no material issue of fact to resolve, and [the moving party] is entitled to judgment in its favor as a matter of law.'" *Mele*, 359 F.3d at 257 (quoting *Leamer v. Fauver*, 288 F.3d 532, 534 (3d Cir. 2002)); *see also Phillips*, 515 at 228 (3d Cir. 2008) (noting that, pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]").

## III. DECISION

### A. Counts One, Seven, Eight, and Nine

Borough Defendants move for judgment on the pleadings on Counts One, Seven, Eight and Nine only insofar as the claims assert violations of the CBA. (ECF No. 8 at 14.) Borough Defendants state the scope of their motion does not include Burke's claims as they are pled under the United States or New Jersey constitutions, NJLAD, or Red Bank's policy manual. (*Id.* at 8 n.2.) They point out the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1, *et seq*. ("EERA") provides all "grievance procedures that employers covered by [EERA] are required to negotiate . . . shall be deemed to require binding arbitration as the terminal step with respect to disputes concerning imposition of reprimands and discipline." (*Id.* at 9 (quoting N.J.S.A. 34:13A-

29).) Borough Defendants argue any of Burke's claims that arise from the CBA must be dismissed and can be only heard in arbitration. (*Id.* at 10.)

In opposition to Borough Defendant's motion, Burke argues EERA does not preclude an employee from asserting claims for violations of NJLAD or related constitutional right in a civil action. (ECF No. 11 at 22 (citing *Gallo v. Salesian Soc., Inc.*, 676 A.2d 580, 600 (N.J. Super. Ct. App. Div. 1996).) More generally, Burke contends the Complaint sufficiently states a claim for violations of NJLAD and of his due process rights under the United States and New Jersey constitutions. (*Id.* at 26-27.) The Court agrees, but Borough Defendant's motion is not as broad as Burke suggests. Borough Defendants' motion does not seek dismissal of Counts One, Seven, Eight, and Nine altogether. To the contrary, they expressly limit their motion to those counts only to the extent the counts state a claim under the CBA. (ECF No. 8 at 8 n.2.)

The Court finds EERA bars Counts One, Seven, Eight, and Nine insofar as those claims arise from the CBA. Therefore, Counts One, Seven, Eight, and Nine are **DISMISSED WITH PREJUDICE** as to Burke's claims for violations of the CBA. Burke's claims in Counts One, Seven, Eight, and Nine for violations of NJLAD and United States and New Jersey constitutions are not affected by this dismissal.

### B. Counts Ten, Eleven, and Twelve

Borough Defendants argue Counts Ten, Eleven, and Twelve should be dismissed as to them, because all of the facts alleged in those counts concern Union Defendants. (ECF No. 8 at 15.) Count Ten alleges Union Defendants failed to adequately represent Burke's interests regarding the Directive and his first termination. (ECF No. 2.) Count Eleven alleges Union Defendants failed to adequately represent Burke's interests regarding the Settlement Agreement

and his second termination. (*Id.*) Finally, Count Twelve alleges Union Defendants' actions intentionally or negligently inflicted emotional distress upon Burke. (*Id.*)

Burke argues dismissal of Counts Ten, Eleven, and Twelve as to Borough Defendants is not appropriate because "the allegations against [Borough Defendants] and [Union Defendants] are interrelated." (ECF No. 11 at 27.) The Court is not persuaded. If Burke seeks to assert Counts Ten, Eleven, and Twelve against Borough Defendants, he must allege a factual basis to support those claims against them. *See Rosado v. Lynch*, No. 15-3999, 2017 WL 2495407, at *4 (D.N.J. June 8, 2017) (dismissing a claim without prejudice when plaintiff did not clearly allege facts supporting the claim and state against whom the claim was asserted); *Ziemba v. Incipio Tech., Inc.*, No. 13-5590, 204 WL 7051782, at *5, (D.N.J. Dec. 12, 2014) ("[E]ach count as to each defendant *must* contain the facts alleged in support for each individual claim").

Therefore, Borough Defendants' Motion for Judgement on the Pleadings on Counts Ten, Eleven, and Twelve is **GRANTED**, and those claims as to Borough Defendants are **DISMISSED WITHOUT PREJUDICE**.

## IV. CONCLUSION

For the foregoing reasons, Borough Defendants' Motion for Judgment on the Pleadings (ECF No. 8) is **GRANTED**. Counts One, Seven, Eight, and Nine are **DISMISSED WITH PREJUDICE** as to Burke's claims for violations of the CBA. Burke's claims in Counts One, Seven, Eight, and Nine for violations of NJLAD and United States and New Jersey constitutions are not affected by this dismissal. Counts Ten, Eleven, and Twelve are **DISMISSED WITHOUT PREJUDICE** as to Borough Defendants.


**Date: March 12, 2018**               */s/ Brian R. Martinotti*
                                       **HON. BRIAN R. MARTINOTTI**
                                       **UNITED STATES DISTRICT JUDGE**